**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| JUDY ELIZABETH VADEN,<br><br>　　Plaintiff<br><br>v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social<br>Security Administration,<br><br>　　Defendant | Case No.: 3:22-cv-00504-CSD<br><br>**Order**<br><br>Re: ECF Nos. 17, 21 |

Before the court is Plaintiff's Motion for Remand. (ECF No. 17.) The Acting Commissioner filed a Cross-Motion to Affirm and Response to Plaintiff's motion. (ECF Nos. 21, 22.)

For the reasons set forth below, Plaintiff's motion is denied, and the Acting Commissioner's cross-motion to affirm is granted.

**I. BACKGROUND**

On August 8, 2019, Plaintiff protectively filed an application for disability insurance benefits (DIB) under Title II of the Social Security Act alleging disability beginning on May 14, 2019. (Administrative Record (AR) 227.) The application was denied initially and on reconsideration. (AR 94, 106.)

Plaintiff requested a hearing before an administrative law judge (ALJ). (AR 120-121.) ALJ Arthur Zeidman held a hearing on June 15, 2021. (AR 52-81.) Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing. Testimony was also taken from a vocational expert (VE). On August 27, 2021, the ALJ issued a decision finding

Plaintiff not disabled. (AR 31-45.) Plaintiff requested review, and the Appeals Council denied the request, making the ALJ's decision the final decision of the Acting Commissioner. (AR 1-4.)

Plaintiff then commenced this action for judicial review under 42 U.S.C. § 405(g). Plaintiff argues: (1) the ALJ failed to properly evaluate the medical opinion evidence from Plaintiff's treating neurologists, and as a result, overstated Plaintiff's residual functional capacity; and (2) the ALJ's credibility finding was not evaluated consistent with Social Security policy and Ninth Circuit precedent as it relates to Plaintiff's work history.

The Acting Commissioner opposes Plaintiff's motion and moves to affirm the ALJ's finding that Plaintiff is not disabled. The Acting Commissioner argues that substantial evidence supports the ALJ's evaluation of the medical opinion evidence and the ALJ's assessment of Plaintiff's subjective allegations.

## II. STANDARDS

**A. Five-Step Evaluation of Disability**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his or her physical or mental impairments are so severe as to preclude the claimant from doing not only his or her previous work but also, any other work which exists in the national economy, considering his age, education and work experience. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. §404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). In the first step, the Commissioner determines whether the claimant is

engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.152(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii), (c); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. If the claimant has an impairment that is severe, the Commissioner proceeds to step three.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the claimant's impairment(s) meets or is the equivalent of one of the Listed Impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d) and § 416.920(a)(4)(iii), (d). The Commissioner presumes the Listed Impairments are severe enough to preclude any gainful activity, regardless of age, education or work experience. 20 C.F.R. § 404.1525(a), § 416.925(a). If the claimant's impairment meets or equals one of the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed disabled. 20 C.F.R. § 404.1520(a)(4)(iii), (d), § 416.920(a)(4)(iii), (d). If the claimant's impairment is severe, but it does not meet or equal one of the Listed Impairments, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past relevant work is that which a claimant performed in the last 15 years, which lasted long enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a) and § 416.920(a).

In making this determination, the Commissioner assesses the claimant's residual functional capacity (RFC) and the physical and mental demands of the work previously performed. *See id.;* 20 C.F.R. § 404.1520(a)(4)(v), § 416.920(a)(4)(v); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R. § 404.1545 and § 416.945. In determining the RFC, the Commissioner must assess all evidence, including the claimant's and others' descriptions of the limitation(s), and medical reports, to determine what capacity the claimant has for work despite his or her impairments. 20 C.F.R. § 404.1545(a)(3) and 416.945(a)(3).

A claimant can return to previous work if he or she can perform the work as he or she actually performed it, *i.e.*, if he or she can perform the "actual functional demands and job duties of a particular past relevant job," or as generally performed, *i.e.*, "[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and citation omitted). If the claimant can still do past relevant work, then he or she is not disabled. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131.

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work available in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez v. Comm'r of Soc. Sec. Admin.*, 740 F.3d 519, 528 (9th Cir. 2014). The Commissioner must also consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the

testimony of a VE or by reference to the Grids.[1] *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).

If the Commissioner establishes at step five that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566(b), § 416.966(b). Conversely, if the Commissioner determines the claimant is unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g), § 416.920(g); *see also Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. Judicial Review & Substantial Evidence**

The court must affirm the ALJ's determination if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Gutierrez*, 740 F.3d at 522 (citing 42 U.S.C. § 405(g)). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th

---

[1] "[The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted).

Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. ALJ's Findings in this Case**

At step one, the ALJ found Plaintiff met the insured status requirements through December 31, 2024, and she had not engaged in substantial gainful activity since the alleged onset date of March 14, 2019. (AR 36.)

At step two, the ALJ concluded Plaintiff had the severe impairment of multiple sclerosis (MS). (AR 37.)

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 37-38.)

At step four, the ALJ assessed Plaintiff as having the RFC to perform light work except she can: lift/carry 20 pounds occasionally and 10 pounds frequently; she can sit for six hours,

stand for 6 hours, and walk for 6 hours; she can push/pull as much as she can lift/carry; she can climb ramps and stairs frequently, but she can never climb ladders, ropes or scaffolds; she can occasionally balance, and frequently stoop, kneel, crouch or crawl; she can never work at unprotected heights, or work around moving mechanical parts or in extreme heat; and she needs to use a cane to ambulate on uneven terrain. (AR 38.)

The ALJ then concluded Plaintiff was unable to perform her past relevant work. (AR 43.)

At step five, the ALJ determined, based on VE testimony, that considering Plaintiff's age, education, work experience and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including: office helper, storage facility clerk, and mailroom clerk. (AR 44.) As a result, the ALJ found Plaintiff not disabled from March 4, 2019, through August 27, 2021, the date of the decision. (AR 44-45.)

**B. Treatment Records**

Plaintiff had a seizure in 2016 and was subsequently diagnosed with MS. During the relevant time period, she treated with two neurologists, Dr. Justine Brink and Dr. Melissa Bloch. She initially tried several disease modifying treatments, including Betaseron, Copaxone, and Tecfidera, but stopped due to adverse side effects. When she saw Dr. Brink on April 19, 2018, Plaintiff felt like she was having a relapse and complained of pins and needles feeling around her back, her legs felt store, and she felt like she was having vertigo when standing. (AR 420.) At that time, she had decreased sensory reaction to light touch in the left arm, slightly decreased vibration sensation bilaterally, and decreased temperature above the ankles bilaterally. Her strength was 5/5 and she had a steady gate with normal bulk and tone and no swelling in the joints. She was advised that sometimes people can have a "pseudo-relapse" brought on by an infection. Dr. Brink wanted to have Plaintiff try a disease modifying treatment. Plaintiff reported

that her spasticity was controlled with Valium at bedtime, which also helped her anxiety. (ECF No. 423.)

At her next appointment with Dr. Brink on June 19, 2018, Plaintiff reported that since her work shifts were moved around, she stopped all her medications. She denied new symptoms suggestive of an MS relapse. Her strength was 5/5, and she had a steady gait. She was put on Tecfidera at a lower dose. (AR 431.) On September 19, 2018, she reported adverse side effects from the lower dose of Tecfidera. She felt she had a relapse a month prior and had to stay home from work for a week due to seeing spots, hyperventilating and feeling hot in her workspace. (AR 434.) She had 5/5 strength bilaterally and a steady gait. They discussed strategies for using Tecfidera given her erratic work schedule. (AR 438.)

On February 27, 2019, she reported considerable pain in her legs, low back and feet, that felt like she was walking on broken glass and radiated up into her legs and knees. (AR 441.) Her strength was 5/5, except for her right hip flexion and left knee flexion, which were 4/5. Her gait was steady and she had normal tone and no swelling. Dr. Brink noted she had bilateral lower extremity weakness on exam. A new MRI was ordered to rule out a demyelinating lesion. (AR 444-445.) The next month, she still had considerable weakness and spasticity-like pain in the left arm and leg. She was prescribed Baclofen for these issues, but her employer said she could not take that medication on the job. On examination, her strength was 5/5, except in the left finger flexion and extension, left hip flexion, left knee flexion and extension of the left ankle, which were 4/5. Dr. Brink characterized her as having bilateral lower extremity weakness as well as left upper extremity weakness. She was advised to take Baclofen for the spasticity. (AR 451-52.)

An MRI of the brain on March 19, 2019, showed one new active enhancing demyelinating lesion in the right frontal area. (AR 474.) At her follow up appointment with

Dr. Brink on April 3, 2019, it was noted that she had received three days of high-dose IV steroids which gave her some relief from the pain in her bilateral lower extremities. She had also started taking Baclofen for spasticity, and it seemed somewhat helpful. At that time, her balance was problematic, but she was not then using any assistive device and denied any falls. Her gait was unsteady, and she was unable to tandem walk. Her strength was 5/5 except for her left finger, hip flexion bilaterally, knee flexion bilaterally, left knee extension, and her ankles bilaterally, which were 4/5. Different treatment options were discussed and Dr. Brink wrote a letter to her employer recommending that she remain out of work unless she could be reassigned to a position where her balance would not affect her so greatly. (AR 456-59.) In that letter, Dr. Brink noted Plaintiff's ongoing gait imbalance may improve with physical therapy, but at that time, she could not work in a position that required her to maintain her balance. (AR 481.)

On July 24, 2019, Plaintiff reported worsening left-sided weakness as well as right leg weakness. On examination, she was positive for myalgias, dizziness, tingling, sensory change and focal weakness. She had decreased vibration and temperature sensation in the bilateral lower extremities and decreased coordination in the bilateral upper extremities with finger tapping. Her gait was unsteady, and she still had spasticity-type pain in the left arm and leg for which she had prescribed Baclofen. Dr. Brink noted this was likely related to new disease activity. It was decided that Plaintiff should start on Aubagio. Another 3 days of IV steroids were ordered for her current relapse. (AR 465.)

Plaintiff was not seen again by a neurologist for nearly a year, until she saw Dr. Melissa Bloch on July 20, 2020. She reported to Dr. Bloch that she had stopped working due to her physical inability to lift, stand, and ambulate on her feet for periods of time. She also indicated she had difficulty with memory and tiredness. At that time, she had full range of motion in her

joints without pain and no signs of joint or muscle swelling. Her strength was 4/5 in all extremities, and her muscle tone was normal. With respect to her gait, she was able to get up from a seated position on the first attempt without assistance, but was unsteady when walking and her movements were fluid with a normal arm swing. She was advised to start on Mavenclad. (AR 356-62.)

On October 26, 2020, Plaintiff reported right hand numbness, weakness in the right ankle, left knee pain, mild memory issues and cognitive concerns, and decreased balance. She had not yet had her scans in order to start on Mavenclad, and reported she would get the scans after she returned from travel to Alabama. Her strength was 4/5 in all extremities with normal tone and normal coordination and sensory exam. She was able to get up from seated on the first attempt without assistance, but was unsteady when walking and again, had fluid movements with a normal arm swing. She was again advised to start on Mavenclad. (AR 365-72.)

An MRI of the brain on February 11, 2021 showed no significant change from the prior study, and there was no enhancing lesion seen suggesting active demyelination. (AR 386.)

The last treatment record from Dr. Bloch is on February 25, 2021, where Plaintiff reported she felt like she was slowly going downhill. She had not been on disease modifying therapy. Her strength was 4/5 in all extremities with normal tone. She was able to get up from seated without assistance on the first attempt, but was unsteady when walking. It was determined she should start on Vumerity once her scans and travel were complete. (AR 395.)

She was seen in the emergency room on June 13, 2021, after having a seizure. It was noted she was not taking any anti-seizure medications, and her last tonic-clonic seizure was four years ago (in 2016) that had led to her MS diagnosis. At that point, she was instructed not to

drive or be exposed to heights of operate heavy machinery until she was able to follow up with her neurologist. (AR 540-42.)

**C. Plaintiff's Testimony and Function Statements**

Plaintiff filled out a disability questionnaire on June 28, 2019, where she indicated that she regularly cooks, cleans, does laundry, and watches television. (AR 341.)

In an adult function report dated October 2, 2019, she said that she suffered from gait imbalance, difficulty walking in a straight line, and if asked to hold a bulky or heavy object while walking, she was at higher risk of falling. She reported problems with concentration, spasticity and coordination. On some days she could clean and do laundry, but most days she was in a lot of pain and had difficulty concentrating. She would feed and water the pets, and she helped her daughter with her homework. She was extremely sensitive to sunlight. At that time, she would shop in grocery stores once or twice a week for 15 to 20 minutes. She talked with friends or family over the phone two to three times a day. She said that her condition had an impact on her ability to lift, squat, stand, walk, kneel, talk, stair climb, as well as on her memory, ability to complete tasks, her concentration and understanding and her ability to follow instructions. She could walk 100 feet before needing to stop and rest. (AR 297-304.)

In a fatigue questionnaire, she reported that she needed to take a two hour nap every day. She would seldom take walks, but if she did, she could walk 30 minutes before getting tired. Her tiredness and weakness made it hard to do household chores. She developed a drop foot which made standing and bending difficulty. Ultimately, she said she could walk for one hour, stand for one hour, sit for four hours, she could never bend from the waist, and she could lift 20 pounds occasionally. (AR 305.)

At the hearing before the ALJ on June 15, 2021, Plaintiff testified that she could no longer drive (as a result of a recent seizure). She had fatigue and constant pain. She seldom left the house, and tried to pick up the house and do laundry when she had the energy. She experienced difficulty sleeping, and felt tired all the time. At that point, she was taking medication for MS to help from having a relapse. She did her shopping online, and her daughter would take her to pick up the groceries. She was usually on the recliner or the couch at home and watched television.  The heaviest thing she lifted was the laundry soap. She could walk 10 to 15 feet before she could sit down, and had been using a cane off and on since 2016 to get around, but it was not prescribed. When she felt fatigued, she would sit down on the couch or recliner for a couple of hours, and typically the rest periods may be more than half of her day. (AR 56-70.)

**D. Medical Opinion Evidence[2]**

**1. Standard**

New regulations were adopted for evaluating medical evidence in Social Security cases that apply to claims filed on or after March 27, 2017, such as this one. 20 C.F.R. pts. 404, 416. Prior to the adoption of these regulations, there was a hierarchy applied to evaluate medical opinions with treating physicians given substantial weight, examining physicians were given greater weight than non-examining physicians, and physicians who only review the record were given less weight than treating or examining physicians. *See Woods v. Kijakazi*, 32 F.4th 785, 789 (9th Cir. 2022). "To reject either a treating or examining physician's opinion, an ALJ [had to] provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise, and the reasons must be supported by substantial

---

[2] Plaintiff argues that the ALJ improperly assessed the opinions of the two treating neurologists; therefore, the court's focus is on those opinions.

evidence." *Id*. (citing *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)). The opinion of a non-examining or reviewing physician could not "'by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)).

Under the new regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over a [a claimant's] own medical source(s), and vice versa." *Id*. at 791 (quotation marks and citation omitted). "'The most important factors' that the agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency'." *Id*. (citing 20 C.F.R. § 404.1520c(a)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant … objective medical evidence.'" *Id*. at 791-92 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent … with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (citing 20 C.F.R. § 404.1520c(c)(2)).

The new regulations acknowledge "that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion." *Id*. (citing 20 C.F.R. § 404.1520c(c)(3)). The ALJ is no longer required to make specific findings on this factor. *Id*. (citing 20 C.F.R. § 404.1520c(b)(2) ("We *may, but are not required to*, explain how we considered the [relationship] factors … when we articulate how we consider medical opinions … in your case record."). "A discussion of relationship factors may be appropriate when 'two or more medical opinions … about the same issue are … equally well-supported … and consistent with the record … but are not exactly the same.'" *Id*. (citing 20 C.F.R. § 404.1520c(b)(3)).

Preliminarily, the court agrees with the Acting Commissioner that the ALJ was not required to discuss the relationship factors because there were not two or more opinions that were "equally well supported" and "consistent with the record."

**2. Dr. Brink[3]**

On September 27, 2019, Dr. Brink opined that Plaintiff's weakness, balance disorder, fatigue and cognitive impairment impacted her ability to return to work. Dr. Brink found that Plaintiff's MS caused cognitive changes, spasticity, and severe fatigue. Dr. Brink opined that Plaintiff could not climb, she could not lift greater than 20 pounds, and could not operate heavy machinery. She could sit, stand, walk, and reach occasionally (0-2.5 hours in a workday); she could engage in fine manipulation and grasping on the right side frequently (2.5-5.5 hours in a workday) and occasionally on the left side; she could lift between 10 and 20 pounds occasionally, and could carry up to 10 pounds, but could never push or pull; she could occasionally climb regular stairs, but never climb ladders, balance, stoop, kneel, crouch, or crawl, and could never use her lower extremities for foot controls. (AR 482-84.)

The ALJ found Dr. Brink's opinion was not persuasive because it was not consistent with the objective medical evidence conducted by Dr. Brink or Dr. Bloch, which showed Plaintiff consistently had decreased strength in her extremities and unsteady gait, but otherwise normal clinical findings and mild and/or stable diagnostic findings. (AR 42.)

The court agrees with the Acting Commissioner that the ALJ did not err in assessing Dr. Brink's medical opinion because the ALJ's reasoning is supported by substantial evidence. While Plaintiff demonstrated reduced strength in the upper and lower extremities, the records

---

[3] The court will not address Dr. Brink's first opinion, which relates to her ability to do her prior work, as the ALJ found Plaintiff could not perform her past relevant work.

from Dr. Brink and Dr. Bloch show a decrease from 5/5 to 4/5. When it was noted that her balance was problematic and her gait was unsteady, she was not using an assistive device, she denied any falls, and no assistive device was prescribed for her. There was one treatment note during the relevant time period that indicated some decreased vibration and temperature sensation in the bilateral lower extremities and decreased coordination in the bilateral upper extremities with finger tapping, but these sensory deficits seem to have resolved by her next neurology appointment, which was approximately a year later.

Therefore, the ALJ did not err in evaluating Dr. Brink's opinion.

**3. Dr. Bloch**

On July 20, 2020, Dr. Bloch described Plaintiff's MS-related symptoms as: cognitive/memory disability, severe fatigue, balance problems, dizziness, leg weakness, urinary urgency/frequency, headaches, blurred vision, neuropathic pain, decreased balance, leg weakness, reflexes, and decreased memory recall. She opined that Plaintiff could sit for one hour and stand/walk for one hour, in an eight-hour workday; she required the use of an assistive device to ambulate; she could not use her hands for grasping, pushing/pulling, fine manipulation or fingering; she could lift/carry up to 9 pounds up to one third of the workday; she could not bend, squat, crawl, climb stairs or ramps, ladders, or scaffolds or reach in all directions; she could not work at unprotected heights or drive or be exposed to dust, fumes, gasses or outdoor temperatures. She further opined that Plaintiff would have roughly 20 "bad days" a month, during which she could not work a full day; her symptoms would interfere with her ability to concentrate and focus more than 50% of the day; she would need to take unscheduled breaks that would last 10 to 15 minutes; and she would likely be absent from work more than 4 days a month due to her medical condition. (AR 500-01.)

On October 26, 2020, Dr. Bloch described Plaintiff's symptoms as including: fatigue, head/neck pressure and pain, paresthesia, and poor cognition and balance, which she said were consistent with her clinical findings. She opined Plaintiff could never climb, balance, stoop, kneel, crouch, crawl, walk, sit, or stand. She could reach up to 2.5 hours. She could lift/carry and push/pull up to ten pounds. She opined Plaintiff was not able to work due to her progression of MS, which is a chronic disabling, neuro-degenerative disease. (AR 354-55.)

In March 2021, Dr. Bloch again opined Plaintiff had the same limitations. (AR 390, 397-98.)

In April 2021, Dr. Bloch opined Plaintiff could not lift, stand, or walk for long periods of time, and she had decreased concentration and endurance, and could not participate in any work. (AR 401.)

The ALJ found Dr. Bloch's opinions were not persuasive because they were not consistent with the objective evidence of record, Plaintiff's treatment course and compliance, and her activities. In addition, the ALJ found these opinions were not supported by Dr. Bloch's own treatment notes which are relatively normal except for decreased strength in all extremities to 4/5 and unsteady walking.

Again, the court agrees with the Acting Commissioner that the ALJ properly evaluated Dr. Bloch's medical opinions.

First, the ALJ's findings that Dr. Bloch's opinions were not consistent with the objective evidence and were not consistent with her own treatment notes are supported by substantial evidence. As was noted above, while Plaintiff continued to have decreased strength in the upper and lower extremities, it remained at 4/5. While she had an unsteady gait while walking, she could get up from a seated position on the first attempt without assistance, and her movements

were fluid with a normal arm swing. No assistive device was prescribed by Dr. Bloch. Plaintiff had full range of motion in her joints without pain, no signs of joint or muscle swelling, and normal muscle tone. There was no discussion of any objective sensory deficits by Dr. Bloch.

These objective findings simply do not support Dr. Bloch's severely restrictive functional conclusions.

Second, the ALJ said that Dr. Bloch's opinions were not consistent with Plaintiff's treatment course and compliance. The ALJ's decision contains several notations in this regard. In June 2018, Dr. Brink noted Plaintiff was not on any disease modifying therapy, but was subsequently restarted on Tecfidera/Vumerity. In March 2019, Plaintiff was not on any disease modifying treatment. Plaintiff was prescribed Baclofen for her weakness and spasticity-like pain, but there is no indication she started taking it prior to March 15, 2019 appointment, although it was prescribed again. As of April 2019, she had started taking the Baclofen for her spasticity, which was somewhat helpful. While Plaintiff continued to have problems with balance and gait and worsening right lower extremity weakness, there was no indication at that time she was utilizing any assistive device or that she needed an assistive device. (AR 39-40.)

Next, the ALJ pointed out there was a one-year treatment gap, which suggested either her treatment was effective resulting in the severity level decreasing or that her condition was not as limiting as initially alleged, and her July 20, 2020 treatment note was relatively normal. (AR 40.)

At that point, Dr. Bloch recommended Plaintiff start Mavenclad, a disease modifying therapy. While Plaintiff complained of weakness and other issues at her October 2020 appointment, Dr. Bloch noted Plaintiff had not started the new therapy yet because she had not completed her scans. Plaintiff said she would complete the scans after she returned from a trip to Alabama. There was no evidence she started the recommended therapy. (AR 41.)

Plaintiff is correct that the record contains evidence that she did not initially take the Baclofen because it was precluded by her employer. However, the ALJ's remaining statements regarding her treatment course and compliance are supported by substantial evidence, and they are a valid basis for finding Dr. Bloch's opinions unpersuasive.

Finally, the ALJ found that Dr. Bloch's opinions were not consistent with Plaintiff's daily activities. (AR 42.) That portion of the decision does not discuss what activities were inconsistent with Dr. Bloch's opinions. Earlier in the decision, the ALJ noted that Plaintiff's statements that tries to perform household chores at times but often had difficulty completing them due to weakness and fatigue. The court agrees that the ALJ did not adequately explain the basis for this portion of the evaluation of Dr. Bloch's opinions, but because the ALJ provided other reasons concerning the supportability and consistency that are supported by substantial evidence relative to Dr. Bloch's opinions, this error regarding the daily activities is harmless.

### E. Subjective Symptoms

Plaintiff argues that section 404.1529(c)(3) and Social Security Rulings (SSRs) 96-8p and 16-3p require the ALJ to consider the claimant's demonstrated historical willingness to work as part of the credibility assessment, and the ALJ erred in not doing so.

SSR 96-8p states that "[t]he RFC assessment must be based on *all* of the relevant evidence in the case record" and then gives examples of such relevant evidence: medical history, medical signs and laboratory findings, the effects of treatment, daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms, evidence from attempts to work, need for a structured living environment and work evaluations, if available. While a claimant's lengthy work history may be relevant to the ALJ's analysis, SSR 96-8p does not require that an ALJ include a written finding in his or her decision.

1     SSR 16-3p similarly requires the ALJ to consider all of the evidence in the claimant's
2 record when evaluating the intensity and persistence of symptoms. It also does not contain a
3 requirement that the ALJ's written decision specifically discuss the claimant's lengthy work
4 history.
5     Plaintiff also relies on *Lingenfelter v. Astrue*, 504 F.3d at 1028 (9th Cir. 2007) to support
6 her argument. In *Lingenfelter*, as a reason for finding the claimant's testimony not credible, the
7 ALJ cited the fact that the claimant testified he worked for a brief period of time in 1999. The
8 Ninth Circuit concluded that "alone [wa]s not a clear and convincing reason for rejecting
9 Lingenfelter's subjective pain and symptom testimony." *Lingenfelter*, 504 F.3d at 1038. The
10 court found that "[i]t d[id] not follow from the fact that a claimant tried to work for a short
11 period of time and, because of his impairments, *failed*, that he did not then experience pain and
12 limitations severe enough to preclude him from *maintaining* substantial gainful employment." *Id*.
13 (emphasis original). *Lingenfelter* does not stand for the proposition that the ALJ must
14 affirmatively discuss a claimant's lengthy work history as part of the evaluation of the claimant's
15 subjective symptom testimony.
16     In the hearing, the ALJ discussed Plaintiff's length work history. The ALJ was not
17 required to specifically discuss that work history as a factor with respect to Plaintiff's subjective
18 symptom testimony. Therefore, the ALJ did not err in this regard.
19 ///
20 ///
21 ///
22 ///
23 ///

## IV. CONCLUSION

Plaintiff's motion for reversal and/or remand (ECF No. 17) is **DENIED**, and the Acting Commissioner's cross-motion (ECF No. 21) is **GRANTED**.

The Clerk shall enter JUDGMENT accordingly.

**IT IS HEREBY ORDERED.**

Dated: October 17, 2023

_____
Craig S. Denney
United States Magistrate Judge